HANS H. OLESEN *vs.* ESSOCK I. BECKANSTIN.

First Judicial District, Hartford, May Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

Compliance with a request to find a certain fact does not involve its finding in the very language of the request; it is sufficient if the desired fact is in effect found.

A finding made upon conflicting evidence will not be disturbed by this court upon appeal.

A written offer to install a complete hot-water heating system of a specified kind in a house then under construction, for a stated

amount, which the owner of the house accepted, is not varied by proof of a custom of the trade to draw off the water used to test the system after it had been put in place. Such a custom is not only implied in the contract, but it aids in interpreting the otherwise indeterminate intentions of the parties with respect to a detail of the work of installation.

Such a custom is, moreover, evidential of what ordinary care requires in respect to the condition in which the heating system should be left, in order to avoid freezing in the pipes and radiators.

Knowledge of a custom is properly attributable to one engaged in the trade to which it relates.

A hot-water heating contractor who, after testing his system, leaves the water in the pipes and radiators without any notice thereof to the owner of the building and without his consent, may properly be found to be negligent.

An assignment of error, to the effect that the trial court misconceived the issues and mistook the law in the judgment rendered, is too general to merit consideration.

Obviously a question as to the existence of a certain custom is not objectionable upon the ground that no such custom has yet been shown.

Argued May 6th—decided July 16th, 1919.

ACTION to recover damages for injuries to a hot-water heating system installed in the plaintiff's house by the defendant, and alleged to have been caused by his negligence, brought to and tried by the Court of Common Pleas in Hartford County, *Markham, J.;* facts found and judgment rendered for the plaintiff for $231, and appeal by the defendant. *No error.*

The contract was evidenced by a proposal in writing as follows: "Hartford, Conn., April 11, 1917.

Mr. H. H. Olesen, Esq.;

No. 577 Blue Hills Avenue,

Hartford, Connecticut.

Dear Sir:—

My price to install One Complete Hot Water Heating System in your house now under construction on Salisbury Street is Four Hundred and Sixty-five ($465.00) using for the purpose 1 No. 630 Spence Hot Water Boiler having a rated capacity of 850 sq.

feet and a 22″ grate and 367 sq. feet of direct radiation divided into seven (7) radiators.

Yours very truly,

E. I. Beckanstin."

This proposal was duly accepted. The defendant completed his installation on or before August 21st, 1917, at which time he was paid in full. Certain paragraphs of the finding are as follows: "5. At about the time the defendant completed the work under the aforesaid contract, he filled the system with water to satisfy himself that it was tight and free from leaks and turned over said Heating System to the plaintiff and left the premises without withdrawing the water, and never thereafter drew off said water from said system. 6. The defendant never informed the plaintiff, nor any one in any manner acting for the plaintiff, that he, the defendant, had filled said system with water or that he had left any water in said system. 7. It is a custom among heating contractors and in the heating installation trade and in the installation of heating systems such as set out in the foregoing contract in and about Hartford, to draw off the water from said heating system when placed there for the purposes set out in paragraph 5 hereof before final completion of the work and before turning over such a system to the owner. 8. The defendant knew that he should not leave water in said system which he installed for the plaintiff without he had the plaintiff's consent so to do or without he first notified the plaintiff that he was going to leave water in said system. 9. The plaintiff visited said premises in the fall or early in the winter in the year 1917. The plaintiff when at said premises found the water in certain radiators and pipes had frozen and broken said radiators and pipes, and the water from said system had run out in the rooms of said premises and

damaged said rooms. The plaintiff notified the defendant of these facts and requested him to repair said damages. This was the first time the plaintiff had any knowledge that any water had been or was left in said system. 10. The defendant neglected and refused to repair said damages."

The court further found that the defendant was negligent in leaving the water in the system without the consent of the plaintiff and without informing him.

The plaintiff thereafter repaired the heating system at a cost of $208.81, and re-dressed certain floors damaged by water at a cost of $18.50, and the court rendered judgment for him to recover these sums, amounting to $227.31.

*Joseph P. Tuttle* and *Reinhart L. Gideon*, for the appellant (defendant).

*James B. Henry*, for the appellee (plaintiff).

GAGER, J.. Certain of the reasons of appeal are based upon claimed errors in the finding, and errors in refusing to find as requested by the defendant. The court did in effect find as to performance as requested by the defendant, though not in the same language. As to the other matters complained of in this respect, it is the ordinary case of conflicting evidence where the defeated party is dissatisfied because his evidence was not believed. A careful examination of the printed testimony certified to this court upon the appeal, shows that there was evidence before the court which, if believed, fully justified its action both in finding and refusing to find, so far as any material facts are concerned. To change or correct would involve a retrial of pure questions of fact. There is not sufficient found-

ation for the claims of the appellant to justify setting out the evidence in detail.

The more important claim of the defendant is that the contract was in writing, and that the finding of a custom that heating contractors draw off the water of hot-water heating systems after testing for leaks, unless consent of the owner is obtained to leave it in or he is first notified, varies a written contract and imposes upon the defendant a duty he did not contract to perform. The written contract in this case was most simple. It was to put in a complete hot-water system of a specified kind and capacity for a certain sum of money, and there it stopped. The custom found by the court relates to a detail of the work of installation in no way contradictory of the contract, but stating how, in the trade, in the absence of contract to the contrary, the heating system should be left by the contractor. We have recently referred to the office of custom and its proof in contracts, whether oral or written, in *Kinney* v. *Horwitz*, 93 Conn. 211, 215, 105 Atl. 438: "This finding as to custom in no way contradicts the written evidence of the contract. It states how, in the trade, payment was to be made in the absence of contract to the contrary, and its usage becomes a part of the contract. As stated in *Leach* v. *Beardslee*, 22 Conn. 404, 408: 'In such case, it may be taken, that the usage entered into, and became part of, the contract.' This principle is well established in reference to all contracts whether written or oral. Judge Story, in *The Schooner Reeside*, 2 Sumner (U. S.) 567, as quoted with approval in *Seymour* v. *Page*, 33 Conn. 61, 66, said: 'The true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presump-

tions, and acts of a doubtful or equivocal character.' *Wiggin* v. *Federal Stock & Grain Co.*, 77 Conn. 507, 516, 59 Atl. 607; *Skiff* v. *Stoddard*, 63 Conn. 198, 219, 26 Atl. 874, 28 id. 104; *Kilgore* v. *Bulkley*, 14 Conn. 362, 390. It is therefore not only proper, but necessary, in order to do justice between the parties, to construe the contract with reference to the custom as found by the court." What was there said is applicable to the present case.

In addition to the cases cited in *Kinney* v. *Horwitz*, 93 Conn. 211, 105 Atl. 438, we quote, as specially applicable to a case where both parties may be presumed from their business to be familiar with the custom, from *Smith & Co.* v. *Russell Lumber Co.*, 82 Conn. 116, 120, 72 Atl. 577: "In the absence of any provision in the contract relating to the delivery upon credit, a lawful and reasonable custom or usage of the trade relating thereto will be taken to have entered into and become a part of the contract. *Leach* v. *Beardslee*, 22 Conn. 404, 409; *Skiff* v. *Stoddard*, 63 Conn. 198, 219, 26 Atl. 874, 28 id. 104. When both parties to the contract are engaged in the trade, they will be presumed to have knowledge of such custom. It is not necsssary in such a case to prove actual knowledge, or that the custom is so general or universal that knowledge may be presumed. It was enough, therefore, to show that there was a usage or custom of the trade in which it was undisputed that both the parties to the contract were engaged, and it was not essential, as claimed by the plaintiff, that the jury should have been told that the custom must be universal and general."

The court was quite within the law in finding and applying the custom to the written contract as interpreting the otherwise indeterminate intentions of the parties, and also in attributing knowledge of the custom to the defendant.

We do not think, however, upon the facts of this case, that it is necessary to invoke the custom strictly as such, as an element of the contract, in order to hold the defendant liable for negligence. His contract was to install a hot-water heating system. The court in its memorandum of decision, incorporated in the finding, well said: "The defendant undertook to install a complete system. The system would not be installed complete, unless so installed that it would not leak. The defendant, to satisfy himself that the system would not leak, filled it with water and tried it out. He then negligently left the water in the system, of which the plaintiff had no knowledge. Subsequently the water froze and damaged the system." The contract necessarily implies, not only that the work should be properly done, but that it should be left in such condition, having in view the owner's lack of knowledge and the nature of the work done, that damage would not normally arise from freezing should it so happen that the owner did not discover the presence of water in the pipes before the freezing occurred. The proof of the custom was evidential of what ordinary care in the trade required under the circumstances.

If there was any error regarding the custom, this defendant cannot complain. The law is summarized upon this point in 29 Cyc. p. 435, as follows: "While in some jurisdictions the ordinary usage or custom of the business or occupation is made the test of negligence, the weight of authority is that as negligence is the doing or failure to do what ordinarily prudent men would do, the test of ordinary usage is too low, and hence proof of custom would not tend to show absence of negligence, especially where the custom is clearly a careless or a dangerous one. In other jurisdictions it is held that the custom may be considered, but is not conclu-

sive." Numerous cases are cited in support of this proposition. Upon the facts as found the court was fully justified in finding that the act of the defendant in leaving the water in the system without notice to or knowledge of the plaintiff was negligence.

The appellant stated, as one reason of appeal, that "the court misconceived the issues and mistook the law in rendering the decision set forth in the memorandum of judgment." This is too general to furnish a ground of appeal, because it does not direct the attention of the court to any specific point as to which the trial court was in error. It is never enough to say simply that the court rendered a wrong judgment: the reason why must be stated.

The defendant also bases his appeal upon error in the admission, against objection, of testimony of the plaintiff and in the examination by the court. The plaintiff had been asked about custom, when counsel for defendant said: "Now, I object to the question simply because there is no evidence as yet that there is any well-recognized custom among contractors in the heating line as to leaving water in the system." The existence of a well-recognized custom must necessarily be established by the proof of one or more witnesses testifying thereto, and the very object of the question was to develop evidence showing such a custom, and was obviously so understood; for the most of the nine pages of testimony printed in the finding for the purpose of exceptions is testimony of other witnesses of the existence of the custom, with no objection whatever thereto except the objection just quoted. We suppose the real ground of exception is that custom was not in the case for any purpose. As stated above, we think it was, both as implied in and as interpretative of the contract, and also as evidential on the question of

negligence. The objections to the examination of the court were evidently of the same character, and neither of them was well taken.

There is no error.

In this opinion the other judges concurred.