HARRIS CALORIFIC SALES COMPANY *v.* MANIFOLD
SYSTEMS, INC.
(6921)

DUPONT, C. J., STOUGHTON and JACOBSON, Js.

Argued February 16—decision released June 6, 1989

*Mark E. Lowell,* for the appellant (defendant).

*Debra J. Zappone,* with whom, on the brief, was *Joseph F. Keefe,* for the appellee (plaintiff).

JACOBSON, J. The defendant appeals from the judgment of the trial court ordering it to pay the plaintiff a specified amount under a contract between the parties. The defendant claims that the trial court erred (1) in concluding that an agreement made by the parties on September 11, 1984, had modified an earlier contract executed by them on December 10, 1982, (2) in finding that the plaintiff had received the defendant's

consent, as required in the earlier agreement, to transact business with a customer with whom the plaintiff was prohibited to deal under the terms of a noncompetition clause in the earlier agreement, (3) in awarding interest to the plaintiff after finding that the defendant had wrongfully withheld payment due the plaintiff under the contract, and (4) in denying the defendant's two postjudgment motions for special findings. We find no error.

The plaintiff is in the business of selling welding supplies, and the defendant manufactures manifolds intended for the distribution of gas. About 1980, two individuals, David McQuay and Leonard Johnson, formed Manifold Systems, Inc., each retaining a one half interest in the corporation. On December 10, 1982, they signed an agreement whereby McQuay, doing business as the plaintiff, Harris Calorific Sales Co., Inc., sold his interest in the corporation to the defendant. The agreement contained a clause prohibiting the plaintiff from competing with the defendant for three years without its written consent.[1] The purchase price of the buyout was $38,400; the defendant was to pay the plaintiff a set amount upon signing the agreement and the remainder was to be paid in quarterly installments. Additionally, after each of three years following the date of the agreement, the plaintiff was to receive 25 percent of the annual gross sales by Manifold Systems, Inc., "to the General Electric facility presently located in Lynn, Massachusetts," less the set figure of $8300.

McQuay asserted that, in 1984, he was contacted by a purchasing agent from General Electric who inquired

---

[1] A portion of this clause stated that "[i]n that [the plaintiff] sells regulators . . . which could have application to [Manifold Systems'] manifolds, [Manifold Systems] shall notify [the plaintiff] from time to time of [its] customers and [the plaintiff] shall be bound . . . to refrain from selling regulators to those customers. [The plaintiff] shall be at liberty to sell regulators only to parties other than [Manifold Systems'] customers."

about purchasing certain equipment. The defendant had had no prior dealings with this purchasing agent. Because the defendant manufactured the equipment that General Electric sought, McQuay contacted Johnson about a potential sale. Following a series of negotiations, the parties signed an agreement on September 11, 1984. The plaintiff was to receive $7641, 25 percent of the total invoiced to the General Electric Company by the defendant, in exchange for turning over to the defendant the purchase orders it had received from General Electric.

The defendant filled the orders and received full payment from General Electric. Despite demands from the plaintiff, the defendant refused to pay, and the plaintiff instituted this action.

The defendant, in its answer, alleged four special defenses. It maintained (1) that the plaintiff already had been paid for the purchase orders under the terms of the buyout agreement, (2) that the later written agreement was void because the defendant signed it under extreme duress, concerned that General Electric would cease doing business with it if the plaintiff and defendant "were to come into conflict over the order," (3) that the plaintiff's procurement of the purchase orders violated the noncompetition clause in the earlier agreement, and (4) that the later agreement lacked consideration because the defendant already was entitled to the orders under the terms of the earlier agreement. The defendant also counterclaimed, claiming damages for the plaintiff's breach of the noncompetition clause in the earlier agreement, and for damages resulting from the parties' duress-induced agreement.

The trial court found that the later agreement was valid and that the defendant had signed it without duress. It further found that the parties intended the later agreement to modify the earlier agreement; alter-

natively, it found that the later agreement constituted a sufficient written consent by the defendant, as required in the earlier agreement, for the plaintiff to have transacted business with the customer. After finding the defendant's withholding of the amount due to the plaintiff wrongful, it awarded the plaintiff interest, as well as damages. This appeal followed.

The defendant's first claim of error challenges the trial court's finding that the later agreement modified the earlier one. As an appellate court, our review of trial court decisions is limited to determining whether their legal conclusions are legally and logically correct, supported by facts set out in the memorandum of decision. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). If the factual basis of the court's decision is challenged, our review includes determining "whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." Id. Reviewed within these well established bounds, we find the trial court's decision that the later agreement modified the earlier one was not erroneous.

" 'Whether a contract exists is a question of fact for the court to determine.' *Randolph Construction Co.* v. *Kings East Corporation,* 165 Conn. 269, 277, 334 A.2d 464 (1973); *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 408, 499 A.2d 64 (1985) [rev'd on other grounds, 202 Conn. 190, 520 A.2d 208 (1987)]. Parties may alter any term of an existing contract by entering into a subsequent contract. Mutual promises qualify as sufficient consideration for a binding contract. *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 267-68, 320 A.2d 811 (1973); *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 342, 150 A.2d 597 (1959). 'For a valid modification, there must be mutual assent to the meaning and con-

ditions of the modification and the parties "must assent to the same thing in the same sense . . . if they are to vary the contract in any way." ' *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 402, 365 A.2d 1086 (1976). 'The meaning to be given subsequent agreements, therefore, depends on the intention of the parties. As intention is an inference of fact, "the conclusion is not reviewable unless it was one which the trier could not reasonably make." ' (Citations omitted.) Id., 402–403." *Manzin* v. *United Bank & Trust Co.,* 6 Conn. App. 513, 516, 506 A.2d 169 (1986).

Given these principles, our question becomes, on appeal, whether the evidence presented to the trial court supported that court's conclusion that the newer agreement modified the earlier one. The evidence presented to the court primarily consisted of testimony of the two individuals mainly responsible for executing the two agreements, McQuay and Johnson. The court chose as more credible the testimony of McQuay, and accepted McQuay's reconstruction of the facts to find that the agreement was valid and not signed under duress. Nothing advanced by the defendant compels us to conclude that the trial court's assessment of the law regarding the modification of contracts, or the facts upon which its conclusions rest, was erroneous.

The defendant asserts that the second agreement failed for lack of consideration. It argues that the plaintiff received a benefit from the 1984 agreement that it was, under the 1982 contract, either obligated to convey to the defendant or to decline to accept in the first instance. We disagree. Although contracts modifying earlier ones must be supported by new consideration; *State National Bank* v. *Dick,* 164 Conn. 523, 529, 325 A.2d 235 (1973); *Gordon* v. *Indusco Management Corporation,* supra, 267; mutual promises are sufficient consideration to bind parties to a modification. *Gordon*

v. *Indusco Management Corporation* supra, 267–68. We find no evidence that would lead us to conclude that the trial court's assessment of the parties' agreements could not have supported its conclusion. The plaintiff promised to negotiate and secure orders on behalf of the defendant in return for a percentage of the total amount invoiced to the customer. These promises constituted sufficient consideration for the 1984 agreement.

The trial court's decision finding that the initial contract was modified by a subsequent agreement is not erroneous. The defendant, therefore, is liable under the valid, later agreement, and it is unnecessary for us to review the defendant's second claim of error, namely, that the trial court erred in finding that the defendant consented to the plaintiff's actions in conducting business with the customer.

The third claim of error advanced by the defendant concerns the court's award of interest to the plaintiff. The essence of the defendant's argument is that awards of interest under General Statutes § 37-3a[2] are permitted only when there is no legitimate dispute and payment is wrongfully withheld. The defendant asserts that, in this case, the defendant's reliance on the noncompetition term in the earlier agreement was reasonable and provided a sufficient basis for a court to decide that an award of interest was not warranted. We disagree.

" ' "Whether interest is a proper element of damages is primarily an equitable determination and is a matter which lies within the discretion of the trial court." *State* v. *Stengel,* 192 Conn. 484, 487, 472 A.2d

---

[2] General Statutes § 37-3a provides in relevant part that "interest at the rate of ten percent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable . . . ."

350 (1984); *Perl* v. *Case,* 3 Conn. App. 111, 116, 485 A.2d 1331 (1985).' *Guaranty Bank & Trust Co.* v. *Dowling,* 4 Conn. App. 376, 386, 494 A.2d 1216 (1985). Interest may be awarded at the statutory rate from the time the money becomes due. . . . The court's decision to award interest is subject to reversal only upon a showing of an abuse of discretion." (Citations omitted.) *Simonetti* v. *Lovermi,* 15 Conn. App. 722, 727, 546 A.2d 331 (1988).

We disagree with the defendant's contention that an award of interest is not appropriate whenever there is a legitimate dispute concerning the construction of a contract. Certainly, in instances in which both parties concede a sum is due and owing under a contract, it may not be an abuse of discretion for the court to award interest; see, e.g., *Simonetti* v. *Lovermi,* supra, 727–28; *Perl* v. *Case,* supra, 117; however, " ' "[t]he determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of any arbitrary rule." *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 398, 65 A. 134 [1906]. The real question in each case is whether the detention of the money is or is not wrongful under the circumstances.' *Cecio Bros, Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 [1971]; *Wells Laundry & Linen Supply Co.* v. *Acme Fast Freight, Inc.,* 138 Conn. 458, 463, 85 A.2d 907 [1952]; *Campbell* v. *Rockefeller,* 134 Conn. 585, 591, 59 A.2d 524 [1948]. Basically, the question is whether the interests of justice require the allowance of interest as damages for the loss of use of money." (Citations omitted.) *Bertozzi* v. *McCarthy,* 164 Conn. 463, 466–67, 323 A.2d 553 (1973). We conclude it was not an abuse of discretion by the trial court to find that an award of interest was warranted.

The defendant's final claim is that the trial court erred in denying the defendant's motion for special findings of fact following the court's decision. The defendant's argument is twofold. Because General Statutes § 52-226[3] provides that the court "shall" make findings of fact upon the written motion of a party, the defendant claims that the court lacked the authority to deny the motion, and further claims that Practice Book § 334[4] suggests that the court's decision that the later agreement modified the earlier one, made without being advanced as an argument by the parties,[5] is deserving of a motion for a special finding.

---

[3] General Statutes § 52-226 provides in pertinent part: "In any trial to the court, except a trial at a small claims session, the court shall find, upon written motion of either party made within fourteen days after the entry of judgment, the facts upon which its judgment is founded, and make the finding a part of the record."

The defendant's motion requested the trial court to answer the following questions:

"1. Whether the General Electric facility in Lynn, Massachusetts was within the penumbra of protected customers included in the noncompetition clause of the December, 1982 agreement between the parties.

"2. If the finding in No. 1 is affirmative; that General Electric at Lynn, Massachusetts was a protected customer, then what was the consideration given by the Plaintiff to the Defendant under the September, 1984 agreement."

[4] Practice Book § 334 provides in relevant part: "[The special findings of fact required by Sec. 327] should contain only facts material to the issues tried. When any fact upon which final judgment is founded is simply a bare conclusion of law from more detailed and subordinate facts, as, for instance, in cases of constructive fraud, the finding, if a special one be requested, must specially set forth the subordinate facts from which, as such conclusion of law, the court finds the principal fact. In such cases the finding should be such as distinctly to show any conclusion of law thus drawn."

[5] The defendant argues that the trial court's legal conclusion, that the later agreement modified the earlier one, could not have been made because the plaintiff did not specifically argue at trial that a modification had occurred. Once again, what the parties intended to accomplish when they made their 1984 agreement is an inference of fact, a question for the trier. Our review of the transcript reveals an adequate basis for the trial court to conclude as it did.

We conclude that this claim is not properly before the court on appeal. "A party whose motion for a special finding under General Statutes § 52-226 has been denied may not assign that denial as error. *Davis* v. *P. Gambardella & Son Cheese Corporation,* 147 Conn. 365, 367 n.1, 161 A.2d 3 (1960)." *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 50, 492 A.2d 223 (1985); see also *Tower* v. *Camp,* 103 Conn. 41, 45, 130 A. 86 (1925). The proper procedure for presenting an adequate factual record for appeal is to move the trial court for articulation under Practice Book § 4051,[6] and, if the court denies the motion, to seek review of that decision by an appellate court pursuant to Practice Book § 4054.[7] The defendant followed this procedure. The trial court denied its motion for articulation and this court denied its motion for review. This argument has already received adequate review.

There is no error.

In this opinion the other judges concurred.

---

[6] Practice Book § 4051 provides in relevant part: "A motion for rectification or articulation shall be filed in triplicate with the chief clerk of the supreme court and forwarded by such clerk to the trial judge. The trial judge shall file the ruling on the motion with the chief clerk of the supreme court.

"Any motion seeking corrections in the transcript or the trial court record which depend on proof of matters not of record or seeking an articulation or further articulation of the decision of the trial court shall be determined by the judge of the trial court whence the appeal is taken or the reservation is made."

[7] Practice Book § 4054 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards rectification of the appeal or articulation under Sec. 4051 may make a written motion for review to the supreme court, to be filed with the chief clerk of the supreme court, and the supreme court may, upon such a motion, direct any action it deems proper."