NEW ENGLAND ROCK SERVICES, INC., ET AL. *v.*
EMPIRE PAVING, INC., ET AL.
(AC 17818)

O'Connell, C. J., and Foti and Schaller, Js.

Argued February 17—officially released June 15, 1999

*Dominic J. Caciopoli,* for the appellants (defendants).

*Thomas J. Farrell,* for the appellee (named plaintiff).

*Opinion*

SCHALLER, J. The defendants, Empire Paving, Inc. (Empire), and its bonding company, American Insurance Company, doing business as Fireman's Fund Insurance Company (Fireman's Fund), appeal from the judgment of the trial court awarding damages to the named plaintiff, New England Rock Services, Inc. (Rock Services),[1] under a contract between the parties. The principal issue on appeal is whether the trial court improperly concluded that an agreement made by the parties on December 9, 1995, modified an earlier contract executed by them on October 26, 1995. We affirm the judgment of the trial court.

The following facts are relevant to the disposition of this appeal. On October 26, 1995, Empire entered into a contract with Rock Services under which Rock Services would provide drilling and blasting services as a subcontractor on the Niles Hill Road sewer project on which Empire was the general contractor and the city of New London was the owner.[2] Pursuant to the contract, Rock

---

[1] Western Mass. Blasting Corporation, a subcontractor of Rock Services on the project and an original plaintiff in this case, withdrew its claims prior to trial.

[2] Fireman's Fund executed a labor and materials bond in connection with the Niles Hill Road project, pursuant to which Fireman's Fund was obligated to pay all contractors and subcontractors who performed work on, or pro-

Services agreed to drill and blast a certain amount of rock encountered on the sewer project. In return, Rock Services was to be paid an agreed upon price of $29 per cubic yard with an estimated amount of 5000 cubic yards, or on a time and materials basis, whichever was less.

On October 31, 1995, Rock Services commenced work on the project. From the beginning, Rock Services experienced a number of problems with the project. The primary obstacle was the presence of a heavy concentration of water on the site. The water problem hindered Rock Services' ability to complete its work as anticipated. The trial court found that it was the custom and practice in the industry for the general contractor to control the water on the site and that, on this particular job, Empire failed to control the water on the site properly. In an effort to mitigate the water problem, Rock Services attempted to "load behind the drill," a process that allows a blaster to load the drilled hole with a charge immediately after the hole is drilled, before water has the opportunity to seep into the hole. The city fire marshal, however, refused to allow Rock Services to employ this method of drilling. See Regs., Conn. State Agencies § 29-349-238.[3] Thereafter, in order to complete its work, Rock Services was compelled to use the more costly and time consuming method of casing the blasting hole, a process that requires the blaster to drive a plastic casing down into the drilled hole to prevent seepage.

In late November, 1995, Rock Services advised Empire that it would be unable to complete the work as anticipated because of the conditions at the site and

vided materials to, the project. On appeal, Fireman's Fund asserts that its liability is entirely contingent upon Empire's liability for the debt.

[3] Section 29-349-238 of the Regulations of Connecticut State Agencies provides: "No loading operation shall be conducted within 25 feet of a drilling operation."

requested that Empire agree to amend the contract to allow Rock Services to complete the project on a time and materials basis. On December 8, 1995, Empire signed a purchase order that modified the original agreement. The modification required Empire to pay for the blasting work on a time and materials basis for the remainder of the project. Rock Services, thereafter, completed its work on the project.

Upon completion of the work, Empire refused to pay Rock Services for the remaining balance due on the time and materials agreement in the amount of $58,686.63,[4] and Rock Services instituted this action. The trial court concluded that the later purchase order was a valid and enforceable modification of the earlier contract.[5] The trial court found that the parties intended the purchase order to modify the earlier agreement and that Empire's assent to the modification was not made under duress but, rather, was a calculated business decision. After finding Empire's withholding of the amount due to Rock Services wrongful,[6] the trial court awarded Rock Services damages in the amount of $58,686.63, plus interest and costs. This appeal followed.

On appeal, Empire claims that the trial court improperly found that the later purchase order was a valid and enforceable modification of the earlier contract. Specifically, Empire claims that the later agreement

---

[4] Empire did pay Rock Services a portion of the balance invoiced by calculating the amount of rock removed from the site at $29 per cubic yard and deducting various setoffs.

[5] Alternatively, the trial court concluded that Rock Services had also proven its claim of promissory estoppel, finding that Rock Services had completed the project in reliance on Empire's promise to pay on a time and materials basis.

[6] Because it found that Rock Services had satisfied the procedural prerequisites for a valid bond claim, including notice to the surety, the trial court also concluded that Fireman's Fund breached its obligation to pay on the bond pursuant to General Statutes § 49-41 et seq.

lacked the requisite consideration to be a valid and enforceable modification of the earlier contract. We disagree.[7]

"As an appellate court, our review of trial court decisions is limited to determining whether their legal conclusions are legally and logically correct, [and] supported by facts set out in the memorandum of decision. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.*, 18 Conn. App. 559, 563, 559 A.2d 241 (1989). Whether a contract or a subsequent modification exists is a question of fact for the court to determine. Id.; see also *Three S. Development Co.* v. *Santore*, 193 Conn. 174, 177–78, 474 A.2d 795 (1984); *Randolph Construction Co.* v. *Kings East Corp.*, 165 Conn. 269, 277, 334 A.2d 464 (1973); *Thermoglaze, Inc.* v. *Morningside Gardens Co.*, 23 Conn. App. 741, 745, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.*, supra, 563.

In concluding that the modification was valid and enforceable, the trial court determined that the later agreement was supported by sufficient consideration. The trial court relied on *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.*, supra, 18 Conn. App. 564, to support its determination that the parties' mutual promises were sufficient consideration to bind them to the

[7] Because we conclude that the later agreement was a valid and enforceable modification, we need not reach Empire's other claim that the trial court improperly concluded that Rock Services had also proven its claim of promissory estoppel.

modification. We conclude that *Harris Calorific Sales Co.* does not support the finding of modification under the circumstances of this case. We do conclude, however, that the trial court's disposition of the case is correct. "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978).

"The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." *State National Bank* v. *Dick,* 164 Conn. 523, 529, 325 A.2d 235 (1973). While mutual promises may be sufficient consideration to bind parties to a modification; *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.,* supra, 18 Conn. App. 564–65; *Gordon* v. *Indusco Management Corp.,* 164 Conn. 262, 267–68, 320 A.2d 811 (1973); *Taft Realty Corp.* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 342, 150 A.2d 597 (1959); a promise to do that which one is already bound by his contract to do is not sufficient consideration to support an additional promise by the other party to the contract. *Thermoglaze, Inc.* v. *Morningside Gardens Co.,* supra, 23 Conn. App. 744–46.

"A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do. [*State National Bank* v. *Dick,* supra, 164 Conn. 529]; *Dahl* v. *Edwin Moss & Son, Inc.,* 136 Conn. 147, 155, 69 A.2d 562 (1949); *Simone* v. *Kirschner,* 100 Conn. 427, 429, 124 A. 20 (1924). It is an accepted principle of law in this state that when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding

contract. See, e.g., *Dahl* v. *Edwin Moss & Son, Inc.*, [supra, 147]; *Gruber* v. *Klein*, 102 Conn. 34, 127 A. 907 [1925]; *Warren* v. *Skinner*, 20 Conn. 559 [1850]. The basis of the rule is generally made to rest upon the proposition that in such a situation he who promises the additional [work] receives nothing more than that to which he is already entitled and he to whom the promise is made gives nothing that he was not already under legal obligation to give. 1 Williston on Contracts, § 130. *Blakeslee* v. *Board of Water Commissioners*, 106 Conn. 642, 652, 139 A. 106 [1927]. *Brian Construction & Development Co.* v. *Brighenti*, 176 Conn. 162, 166, 405 A.2d 72 (1978). *Simone* v. *Kirschner*, supra [429]." (Internal quotation marks omitted.) *Thermoglaze, Inc.* v. *Morningside Gardens Co.*, supra, 23 Conn. App. 745–46.

Our Supreme Court in *Blakeslee* v. *Board of Water Commissioners*, supra, 106 Conn. 656, however, articulated an exception to the preexisting duty rule: " '[W]here a contract must be performed under burdensome conditions not anticipated, and not within the contemplation of the parties at the time when the contract was made, and the promisee measures up to the right standard of honesty and fair dealing, and agrees, in view of the changed conditions, to pay what is then reasonable, just, and fair, such new contract is not without consideration within the meaning of that term, either in law or in equity.' " As to the test to be applied in such a situation, our Supreme Court in *Blakeslee* quoted with approval the Supreme Court of Minnesota in *King* v. *Duluth, Missabe & Northern Ry. Co.*, 61 Minn. 482, 488, 63 N.W. 1105 (1895): " 'What unforeseen difficulties and burdens will make a party's refusal to go forward with his contract equitable, so as to take the case out of the general rule and bring it within the exception, must depend upon the facts of each particular case. They must be substantial, unforeseen,

and not within the contemplation of the parties when the contract was made. They need not be such as would legally justify the party in his refusal to perform his contract, unless promised extra pay, or to justify a court of equity in relieving him from the contract; for they are sufficient if they are of such a character as to render the party's demand for extra pay manifestly fair, so as to rebut all inference that he is seeking to be relieved from an unsatisfactory contract, or to take advantage of the necessities of the opposite party to coerce from him a promise for further compensation. Inadequacy of the contract price which is the result of an error of judgment, and not of some excusable mistake of fact, is not sufficient.' " *Blakeslee* v. *Board of Water Commissioners*, supra, 657. This theory of unforeseen circumstances is applicable to the facts of this case.

Empire argues strenuously that the water conditions on the site cannot qualify as a new circumstance that was not anticipated at the time the original contract was signed. To support its contention, Empire points to the contract documents prepared for the city of New London, which contained all the job specifications. Empire asserts that those job specifications were incorporated by reference into Rock Services' subcontract agreement. Empire claims that the job specifications "set out all the known site conditions" and "included specific information that the rock ledge that [Rock Services] was to drill and blast existed below the known water table." Empire claims, therefore, that Rock Services was not confronted with any new circumstances not specifically contemplated when their contract was made.

Empire's argument, however, is misplaced. Rock Services does not argue that it was unaware of the water conditions on the site but, rather, that Empire's failure to control or remove the water on the site constituted the new or changed circumstance. Rock Services argues

that Empire's duty to control or remove the water on the job site arose in accordance with the custom and practice in the industry and, therefore, Empire's failure to control or remove the water on the site constituted a new circumstance that Rock Services did not anticipate at the time the original contract was signed.

In its memorandum of decision, the trial court found that Empire had a duty to control or remove the water from the job site according to the custom and practice in the industry and project specifications.[8] Empire claims, however, that the trial court improperly looked outside the parties' original contract to the industry custom and practice to find a duty to control or remove the water. Essentially, Empire argues that the language of the written contract was clear, and that the finding of an industry custom or practice that general contractors control or remove the water on job site, varied the written contract and imposed upon Empire a duty that it did not contract to perform.

Empire is correct to point out that the language of the contract is silent and by itself does not give rise to

---

[8] The trial court heard testimony from John Gilman, a representative of Rock Services with over thirty years experience in the blasting trade, that it was the custom and practice in the industry for the general contractor to control the water on the job site, and that water could almost always be controlled by the general contractor through the use of pumps, sumps and well points. Representatives from Empire testified conversely that Empire had never been obligated to remove water from a job site for a predrilling operation. "Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W,* 190 Conn. 371, 404, 461 A.2d 422 (1983). The probative force of conflicting evidence is for the trier to determine. *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 257, 524 A.2d 610 (1987). "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) *Steiger* v. *J. S. Builders, Inc.,* 39 Conn. App. 32, 34–35, 663 A.2d 432 (1995). "The trier is free to accept or reject, in whole or in part, the testimony offered by either party." *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981).

a contractual obligation to control or remove the water from the site prior to Rock Services' drilling and blasting. Because the contract is silent on that issue, however, it does not indicate the parties' intent as to Empire's obligation to control or remove the water on the site. Under those circumstances, the trial court, in order to determine the intent of the parties on this issue, looked properly to the industry custom and practice. Absent a finding that the industry custom or practice contradicts or varies the specific terms of the written contract, the use of an industry custom or trade is appropriate "to interpret the otherwise indeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character. . . . It is therefore not only proper, but necessary, in order to do justice between the parties, to construe the contract with reference to the custom as found by the court." (Citations omitted; internal quotation marks omitted.) *Olesen* v. *Beckanstin*, 93 Conn. 614, 618–19, 107 A. 514 (1919); see also *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 38–39, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986); 2 Restatement (Second), Contracts § 222 (1981).[9] Here, the trial court properly found and applied the industry custom and practice to the written contract to interpret the parties' indeterminate intentions. Thus, it may be taken that the industry trade and practice entered into, and became part of, the contract. *L. F.*

---

[9] Section 222 of the Restatement (Second), Contracts (1981), provides in relevant part: "(1) A usage of trade is a usage having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to a particular agreement. . . . (2) The existence and scope of a usage of trade are to be determined as questions of fact. . . . (3) Unless otherwise agreed, a usage of trade in the vocation or trade in which the parties are engaged or a usage of trade of which they know or have reason to know gives meaning to or supplements or qualifies their agreement."

*Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, supra, 38–39; see also *Olesen* v. *Beckanstin*, supra, 618–19.

In addition to finding that Empire had a duty to control or remove the water from the job site, the trial court found further that Empire's failure to control or remove the water from the site made Rock Services' working conditions sufficiently burdensome to prevent Rock Services from completing the work as anticipated, forcing Rock Services to attempt to use a different method of drilling and ultimately compelling Rock Services to use the more costly and time consuming method of casing the blasting hole. The trial court further found that Empire's failure to control or remove the water on the site constituted a new circumstance not anticipated by the parties at the time the original contract was signed. In addition, the trial court also found that Rock Services' request for the modification was not wrongful but, rather, was justified under the circumstances and did not constitute duress as a matter of law.

Upon our review of the record, we conclude that the trial court's findings of fact are supported by the record and are not clearly erroneous. On the basis of the trial court's findings, as supported by the record, we conclude that the later purchase order was a valid and enforceable modification to the earlier contract.

The judgment is affirmed.

In this opinion the other judges concurred.