[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On September 23, 1999, the plaintiff, F. Glenn Christian, filed a two count complaint against the defendants, Joanne A. Gouldin, Executrix of the Estate of Norman H. Gouldin, Angelo L. Miglietta, James M. Belcher, Keene Industries, Inc., and Keene Industries I Limited Partnership. The complaint arises out of a dispute over compensation allegedly due the plaintiff pursuant to a partnership agreement. Count one sets forth a claim for breach of contract against the individual partners, Joanne A. Gouldin, Executrix of the Estate of Norman H. Gouldin[1], Angelo L. Miglietta, and James M. Belcher. Count two sets forth a claim for breach of contract against Keene Industries, Inc. and Keene Industries I Limited Partnership.
The following facts are not in dispute. On or about June 22, 1988, CT Page 1769 Norman H. Gouldin, Angelo L. Miglietta, James M. Belcher, Kenneth D. Gerhart and the plaintiff, F. Glenn Christian formed a general partnership, Keene Industries Company. Subsequently, on or about May 17, 1989, the individuals listed above and Keene Industries, Inc., along with William G. Becker and William H. Butler, executed an amended and restated partnership agreement (May agreement) for Keene Industries Company. The May agreement provided in pertinent part that upon termination of a partner's employment with the partnership, for any reason, such partner's interest shall be liquidated pursuant to the "liquidation price" provision in the agreement. The "liquidation price" provision specified a formula for calculating the value of the withdrawing partner's interest in the partnership and was comprised of income, guaranteed payment and capital account portions.
The May agreement further provided that the income and capital account portions of the liquidation price were to be paid within 180 days after the partner's termination date and the guaranteed payment portion was to be paid in equal quarterly installments over a four year period, beginning on the partner's termination date. In addition to the termination and liquidation price provisions, the agreement contained a payment cap provision. The cap provision provided that, in the event that the total amount due to all withdrawing partners was in excess of $650,000 within any fiscal year, the partnership had the option of deferring portions of the payments due all withdrawing partners on a pro rata basis, thereby limiting its liability to withdrawing partners to $650,000 in any given fiscal year. The May agreement did not provide for interest on any amounts due a former partner.
The plaintiff alleges that he was terminated from the partnership on December 31, 1991, and that pursuant to the May agreement, upon termination, he was entitled to the sum of $994,597.28. of the $994,597.28 sum, $900,000 represents the plaintiff's guaranteed payment. The remaining $94,597.28 represents the balance of the his capital account as of the termination date. Further, the plaintiff alleges that, notwithstanding the four year payment provision of the May agreement, he agreed to accept sixty monthly payments of $15,000 each in satisfaction of the amount due him as guaranteed payment. Finally, the plaintiff alleges that all installment payments are due because the partnership and the partners have failed to make any such payments to him.
On November 1, 1999, the defendants filed an answer and two special defenses. In their answer, the defendants deny that any payments are due pursuant to the May agreement. By way of their first special defense, the defendants allege the following. On January 1, 1992, one day after the plaintiff's termination date, the plaintiff and Keene Industries Company and Keene Industries, Inc, entered into a letter agreement. The letter CT Page 1770 agreement, which proposed terms different from those of the May agreement, was executed by the plaintiff on or about January 15, 1992. It provided that the guaranteed payment portion of the "liquidation price," as that term is defined by the May agreement, would be paid in sixty equal monthly installments of $15,000, commencing on January 31, 1993, which is more than one year after the plaintiff's termination date. The letter agreement also included a provision for interest on late payments. It did not include a payment cap provision. The defendants allege that, pursuant to the letter agreement, the plaintiff agreed that all amounts due to him by the partnership were to be satisfied from the assets of the partnership and were without recourse as to the individual partners. The letter agreement also contained a general release provision whereby the plaintiff released the partnership and its partners from all other claims and agreements the plaintiff may have against the partnership, the partners, and/or the corporation with respect to payment of the liquidation price. Further, the letter agreement set a purchase price and payment schedule for the purchase of the plaintiff's shares of stock in Keene Industries, Inc. The defendants allege that, following execution of the letter agreement, the plaintiff tendered his shares of stock to Keene Industries, Inc. and was paid monthly installments on the purchase price of the stock.
In their second special defense, the defendants restate the allegations of their first special defense, that all amounts due by the partnership pursuant to the letter agreement were to be satisfied from the assets of the partnership, without recourse to any of its partners, and that by executing the agreement, the plaintiff agreed to release the partnership and the partners from all other claims and agreements.
Pursuant to Practice Book § 17-44 et seq., the individual defendants, Joanne A. Gouldin, Executrix of the Estate of Norman H. Gouldin, Angelo Miglietta and James M. Belcher now move for summary judgment on count one of the plaintiff's complaint on the ground that the payments the plaintiff seeks to recover are subject to the letter agreement in which the plaintiff waived any right of recourse he may have had against them. The defendants filed a memorandum of law in support of their motion to which they attached the following documents: the affidavit of James M. Belcher, a copy of the May 17, 1989 partnership agreement and a copy of the January 1, 1992 letter agreement. The plaintiff filed an objection to the defendants' motion for summary judgment and a supporting memorandum of law and his affidavit.
 DISCUSSION
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." CT Page 1771Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; see also Miles v. Foley,253 Conn. 381, 385, 752 A.2d 503 (2000).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Sherwood v. DanburyHospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . . The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." (Citation omitted; internal quotation marks omitted.) Reynolds v.Chrysler First Commercial Corp., 40 Conn. App. 725, 731, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996).
The defendants assert that the plaintiff is bound by the terms of the January 1, 1992 letter agreement. They contend that, because the letter agreement supercedes the May agreement as to the payments the plaintiff seeks to recover and expressly provides that all amounts due to him were to be satisfied solely from the assets of the partnership, he may not now seek recovery from the individual partners. Further, the defendants argue that because the letter agreement is supported by consideration, it is an enforceable agreement. They claim that the plaintiff negotiated for the inclusion of the interest provision, entitling him to interest on late payments, and for the exclusion of the cap provision, eliminating the risk of having his fiscal year payments reduced, in exchange for agreeing to resort only to the assets of the partnership for satisfaction of any amounts due him and for agreeing to release the partners from all other claims and agreements.
The plaintiff argues that summary judgment is not warranted because the interpretation of a contract requires the court to determine the intent or state of mind of the contracting parties. He asserts that reasonable minds could differ as to what effect, if any, the letter agreement was to have on the rights and obligations of the parties under the May agreement. Moreover, the plaintiff claims that the letter agreement is not supported by consideration because it merely obligates the defendants to pay the plaintiff the "liquidation price," which they were already bound to do under the May agreement, and is therefore unenforceable. He contends that his right to payment under the letter agreement was still subject to the payment cap contained in the May agreement because the CT Page 1772 letter agreement does not expressly eliminate it. He further contends that the interest provision alone is inadequate consideration to support releasing the defendants from their liability to him under the May agreement. Finally, the plaintiff argues that the defendants should be estopped from enforcing the letter agreement against the plaintiff because, by its terms, the letter agreement represents that the plaintiff retained contractual rights pursuant to the May agreement.
While "ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Tallmadge Bros. v. Iroquois GasTransmission System, 252 Conn. 479, 495, 746 A.2d 1277 (2000). "The interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face." 11 S. Williston, Contracts 4th Ed., § 30:6, pp. 77-83 (1999). The court will not torture words to import ambiguity where none exists; ambiguity must come from the language used rather than from one or the other party's subjective understanding of the terms. Southeastern Conn. Regional Resources Recovery Authority v. Dept.Public Utility Control, 244 Conn. 280, 291, 709 A.2d 549 (1998)
"A contract is to be construed as a whole and all relevant provisions . . . considered together. . . ." (Internal quotation marks omitted.) HLOLand Ownership Associates Ltd. Partnership v. Hartford, 248 Conn. 350,356, 727 A.2d 1260 (1999). "[E]very provision . . . must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements." (Internal quotation marks omitted.) Plikus v. Connecticut Light Power Co., 42 Conn. App. 299,303, 679 A.2d 401 (1996). "Our Supreme Court has frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative." Patron v. Konover, 35 Conn. App. 504, 518, 646 A.2d 901, cert. denied, 231 Conn. 929, 648 A.2d 879 (1994). "In interpreting contract items . . . the language used must be accorded its common, natural, and ordinary meaning and usage. . . ." (Internal quotation marks omitted.) HLO Land Ownership Associates Ltd. v. Hartford, supra,248 Conn. 356.
Further, "[t]he doctrine of consideration is fundamental in the law of contracts. . . . [A] promise to do that which one is already bound by his contract to do is not sufficient consideration to support an additional promise by the other party to the contract." (Citations omitted; internal quotation marks omitted.) New England Rock Services, Inc. v. EmpirePaving, Inc., 53 Conn. App. 771, 776, 731 A.2d 784, cert. denied, CT Page 1773250 Conn. 921, 738 A.2d 658 (1999). A modification to an existing contract must be supported by consideration and requires a party to do or promise to do something more or different from that which he is already bound to do. Id. "The doctrine of consideration does not require . . . an equal exchange between the contracting parties. . . . The general rule is that, in the absence of fraud . . . a contract will not be rendered unenforceable at the behest of one of the contracting parties merely because of an inadequacy of consideration." (Internal quotation marks omitted.) State v. Lex Associates, 248 Conn. 612, 619, 730 A.2d 38
(1999).
In the present case, the letter agreement recites that it is in reference to the plaintiff's termination and sets out four numbered paragraphs. The pertinent portions of paragraph one provide as follows. "By execution of this letter agreement, you hereby sell and assign to the Partnership all of your right, title and interest in the Partnership . . . in exchange for the Partnership's promise to pay to you the Liquidation Price, as such term is defined in Section 14(a) of the Partnership Agreement. You hereby agree that all amounts due by the Partnership to you pursuant to this letter agreement shall be satisfied from the assets of the Partnership and shall be without recourse to any of its Partners, as such term is defined in the Partnership Agreement." Paragraph two sets out a purchase price and payment schedule for the repurchase of the plaintiff's stock in the corporation. Paragraph three provides for ten percent interest per annum for any amount greater than 30 days past due under the letter agreement. Paragraph four provides: "In consideration of the foregoing, you hereby release and forever discharge the Partnership, the Partners and the Corporation from any and all claims, rights, obligations, agreements, demands, and indemnities which you have or may have against the Partnership, the Partners, and/or the Corporation including but not limited to any claims for accrued but unpaid compensation and severance." The letter agreement makes no mention of a payment cap.
The language of the letter agreement is clear and decisive, and the agreement is unambiguous on its face. Therefore a determination concerning what the parties intended is wholly a question of law for the court. While it is true that the letter agreement does not expressly state that it supercedes the May agreement, the language used makes clear that it was intended to do just that. By construing all relevant paragraphs together and in giving the words used their ordinary meaning, the without recourse language of paragraph three, when read in conjunction with the release and discharge language of paragraph four, demonstrates that it was the intention of the parties that the letter agreement was meant to extinguish any rights the plaintiff may have had against the individual defendants pursuant to the May agreement. By CT Page 1774 executing the letter agreement, the plaintiff was agreeing to be bound its terms. Because the plaintiff is bound by the terms of the January 1, 1992 letter agreement, which limited his right of recourse to the assets of the partnership, the plaintiff is barred from seeking payments from the individual partners named in the first count of the complaint.
Additionally, the letter agreement differs from the May agreement in that the letter agreement contains no cap provision and adds a provision for interest on late payments. Accordingly, the plaintiff received consideration in exchange for his promise to seek payment only from the assets of the partnership without recourse to the individual partners. The letter agreement is therefore supported by consideration, and should be enforced according to its terms.
For all the foregoing reasons, the defendants' motion for summary judgment as to count one is granted because there is no genuine issue of material fact regarding the construction of the letter agreement and the defendants are entitled to judgment as a matter of law.
CHASE T. ROGERS, J.