[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO ENFORCE SETTLEMENT AGREEMENT
On June 19, 2002, this court rendered a preliminary decision on a motion to enforce a settlement agreement, ruling that although "this court cannot enforce the agreement as a matter of law . . . an evidentiary hearing should be held to determine if the plaintiffs have a cause of action for promissory estoppel, which essentially sounds in contract law and whether such a cause of action may be asserted in the instant case or must be brought in a subsequent action." Foster v.Longo, Superior Court, judicial district of New Haven, Docket No. CV 99 0425745 (June 19, 2002) (32 Conn.L.Rptr. 417). This court conducted such an evidentiary hearing on October 28, 2002.
The relevant facts were set out in this court's June 19, 2002 decision: On May 2, 2001, the attorney for the defendant extended to the plaintiffs' counsel a written offer to settle each of the claims of plaintiffs Christopher Foster and Gina Foster for $10,000 per claimant. That offer did not contain any expiration date, nor were specific conditions attached to it. The plaintiffs responded to the offer by continuing negotiation discussions and by indicating a willingness to reduce their demands to $25,000 and $20,000. At a subsequent pretrial plaintiffs' counsel responded to the written offer with a letter indicating his clients' acceptance of the initial offer of $10,000. The defendant denied that the offer remained after the new demand, which the defendant treated as a counter-offer. The parties concede that the defendant did not communicate an explicit withdrawal of the offer. Rather, the defense counsel stated that his client relied on principles of contract law and believed that subsequent negotiations, in the form of a new demand by plaintiffs' counsel, constituted a rejection of the offer. Notably, although not necessarily dispositive of the issue in dispute in this matter, the defendant had similarly extended an offer to co-plaintiff, Glen Foster. That offer was formally withdrawn.
"Plaintiffs' counsel argues that, notwithstanding principles of CT Page 2813 contract law, he relied upon the custom and practice of trial lawyers and insurance carriers when he entered negotiations in the instant case. That practice, he maintains, allowed offers to remain "on the table" unless otherwise indicated. That practice, he argued, is commonly understood and accepted among members of both the defense bar and the plaintiff's bar.
"The plaintiffs, Gina and Christopher Foster, move to enforce the settlement agreement. The defendant opposes this motion, claiming that there was no agreement between the parties. The issue in dispute is this: did the parties reach an agreement which is legally enforceable?"Foster v. Longo, supra, 32 Conn.L.Rptr. 417.
This court has previously held that because the defendant's settlement offer was not directly accepted by the plaintiffs, there was no contractual agreement as a matter of law. The plaintiffs argue, however, that based on equitable principles, an agreement should be found to exist. The plaintiffs argue that it is the custom and practice of the Connecticut plaintiff and defense bar that a settlement offer remains good until explicitly withdrawn. Testimony in support of this argument was heard from an expert witness for the plaintiffs. Though this court found the expert's testimony persuasive, and therefore, concluded that a custom and practice does exist in Connecticut whereby offers generally remain until explicitly withdrawn, for reasons more fully set forth, this court holds that the evidence fails to establish the existence of an agreement. Therefore, there is nothing to enforce, and this court must deny the motion.
In Carle v. Lebeau, Superior Court, judicial district of New Britain, Docket No. CV 99 0496801 (June 13, 2002, Berger, J.) (32 Conn.L.Rptr. 334), the court also was faced with the issue of whether the parties had entered into a binding settlement agreement. In that case, as in the instant one, the defendant made an offer to settle the case, to which the plaintiff responded with a counter-offer. Later, the plaintiff returned and indicated that he would accept the original figure offered. The defendant responded that the offer was no longer on the table. The plaintiff moved to enforce the settlement. The court in Carle v. Lebeau
noted that the concepts of custom or usage of the trade are not applicable in the context of a settlement agreement since "[t]hey derive from the Uniform Commercial Code; General Statutes § 42a-1-102; and only apply to commercial transactions." Id., 335 n. 1. The court further noted that "[e]ven if applicable, testimony is required on the concept . . . and none was offered." (Citations omitted; emphasis added.) Id.
Although testimony was offered in the present case regarding the application of custom or usage of trade to settlement agreements, this court concludes that even if the concepts of custom or usage of trade do CT Page 2814 apply in the context of settlement offers and are not limited to commercial transactions governed by the Uniform Commercial Code, those concepts do not provide a basis for granting the plaintiffs' motion to enforce the settlement agreement. Custom and practice may be useful, even outside commercial transaction contexts, to interpret agreements, but this court finds no support for the conclusion that they may be used as a basis for finding the existence of an agreement.
"Section 221 of the Restatement (Second) of Contracts (1981) provides in part: `An agreement is supplemented or qualified by a reasonable usage with respect to agreements of the same type if each party knows or has reason to know of the usage and neither party knows or has reason to know that the other party has an intention inconsistent with the usage.'"Presidential Capital Corp. v. Reale, 231 Conn. 500, 511 n. 10, 652 A.2d 489
(1994). "Section 222 of the Restatement (Second), Contracts (1981), provides in relevant part: `(1) A usage of trade is a usage having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to a particular agreement . . . (2) The existence and scope of a usage of trade are to be determined as questions of fact . . . (3) Unless otherwise agreed, a usage of trade in the vocation or trade in which the parties are engaged or a usage of trade of which they know or have reason to know gives meaning to or supplements or qualifies their agreement.'" New EnglandRock Services, Inc. v. Empire Paving, Inc., 53 Conn. App. 771, 780,731 A.2d 784, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999).
"Absent a finding that the industry custom or practice contradicts or varies the specific terms of the written contract, the use of an industry custom or trade is appropriate to interpret the otherwise indeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character . . . It is therefore not only proper, but necessary, in order to do justice between the parties, to construe the contract with reference to the custom as found by the court." (Internal quotation marks omitted.) New England Rock Services, Inc. v. Empire Paving, Inc., supra,53 Conn. App. 780 n. 9.
The Restatement and the Connecticut case law outlined above speak to the use of the concepts of custom or usage of trade to interpret agreements, not, as the plaintiff argues, to find that contracts exist. To apply those concepts, there must first be a finding that an agreement exists. Those concepts would then be used to give meaning to, to supplement or to qualify the agreement. Those concepts do not resolve the issue in dispute in this case, that is, did the parties reach an CT Page 2815 agreement which is legally enforceable.
The plaintiffs established that it is a trade practice to extend offers and let them remain until accepted or rejected unless notification is given that the offer is or will be withdrawn, even if a counter-offer is made. This custom would be relevant and pertinent if the plaintiffs had also established that they had reached an agreement with the defendant. In order to have proven this, the plaintiffs would have needed to show that they had accepted the offer, without making a counter-offer, and that the defendant failed to comply with the agreement. In such a case, custom and usage might be relevant to interpret or analyze the agreement. In this case, however, there is no contractual agreement.
The plaintiffs also argue that the doctrines of promissory and equitable estoppel apply to the facts of the present case. "Promissory estoppel involves a clear and definite promise, while equitable estoppel involves only representations and inducements." Union Carbide Corp. v.Danbury, 257 Conn. 865, 874 n. 2, 778 A.2d 204 (2001), quoting 28 Am.Jur.2d 465, Estoppel and Waiver § 35 (2d Ed. 2000). "A fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Wellington Systems, Inc. v. Redding Group, Inc.,49 Conn. App. 152, 162, 714 A.2d 21 (1998), cert. denied, 247 Conn. 905,720 A.2d 516 (1998). "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge."Chotkowski v. State, 240 Conn. 246, 268, 690 A.2d 368 (1997). "Estoppel rests on the misleading conduct of one party to the prejudice of the other." Brzezinek v. Covenant Ins. Co., 74 Conn. App. 1, 8, 810 A.2d 306
(2002).
Our Supreme Court, whether applying the doctrine of equitable or promissory estoppel, has "recognized that estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." Union Carbide Corp. v. Danbury, supra,257 Conn. 873 (applying equitable estoppel); see also Chotkowski v.State, supra, 240 Conn. 268 (applying promissory estoppel).
The plaintiffs in the present case have not established that the defendant affirmatively promised to keep his settlement offer available for acceptance through the start of trial. Though this was what the CT Page 2816 plaintiffs understood would be done, based on past practices with insurance companies, the defendant in this case did not explicitly make such a representation. Without a clear and definite promise from the defendant, the doctrine of promissory estoppel cannot be said to apply. Furthermore, the plaintiffs failed to prove any facts from which it could be found that the defendant did or said anything calculated or intended to induce the plaintiffs to believe that the defendant's settlement offer would remain available after the plaintiffs' counteroffer. There has been no misleading conduct on the defendant's part. To be sure, the plaintiffs established that they were mistaken in their belief that the offer was still available, but this mistaken belief was not fostered by words or conduct of the defendant. Rather, this mistaken belief was based upon a presumption of behavior based on observation of other defendants in similar situations.
The plaintiffs therefore have not proven sufficient facts for a finding of promissory estoppel, or equitable estoppel. Neither did the plaintiffs prove that they had reached an agreement with the defendant. Accordingly, the plaintiffs' motion for enforcement of the settlement offer is denied.
Robinson-Thomas, J. CT Page 2817