WILLIAM H. HARRIS ET AL. *v.* SAMUEL W. CLINTON ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued March 4—decided April 29, 1952

*James F. Rosen* and *Constance B. Motley*, of the New York bar, with whom was *John W. Newman*, for the appellants (plaintiffs).

*T. Holmes Bracken*, with whom was *Richard L. Reilly*, for the appellees (defendants).

BROWN, C. J.   The plaintiffs as assignees of a written contract by the defendants to convey a building lot in West Haven to Peter Horbick, the plaintiffs' assignor, brought this action for specific performance.   The defendants pleaded by way of special defense that the written contract failed to state the true intent of the parties because as an inducing consideration Horbick had agreed that he "would not assign his interest in the same to any other party without securing the consent and approval thereto of said defendants."   They further alleged that he had violated this provision.   The special defense also alleged that it was agreed that Horbick would utilize stone on the premises to build a house.   During discussion of the disposition of the

issues, however, defendants' counsel made a statement to the court which expressly limited the issue for determination under the defense to that defined in the words quoted. We restrict our discussion accordingly. In a counterclaim the defendants asked that the contract be reformed and rescinded. The court rendered judgment decreeing rescission of the contract and that the consideration received by the defendants be paid over to the plaintiffs. The latter have appealed.

The case was claimed to the jury, but by agreement of counsel only a single issue was submitted to them. This was done by way of an interrogatory. All other issues were tried to the court. It found the following facts, which are not subject to correction: Several years prior to 1948 the defendants had purchased a real estate development in West Haven consisting of thirty lots. They had sold some of them from time to time and houses had been built thereon. No Negroes reside in the development. Late in the fall of 1948 Peter Horbick contacted the defendants about purchasing lot 52. This lot consisted largely of rock, which Horbick, who was a sculptor and stone mason, planned to utilize in constructing a dwelling. On December 28, 1948, Horbick and the defendants entered into a written agreement, annexed as an exhibit to the complaint, for the purchase and sale of the lot. This agreement was in the form of a bond for a deed. It acknowledged a down payment by Horbick of $50 and contained the defendants' promise to deliver a warranty deed to him on or before December 31, 1950, upon his payment of the $250 balance of the purchase price as prescribed. It further provided that the instrument should not be recorded.

Early in May, 1949, Horbick asked permission of the defendant Clinton to sell his interest in the premises because he had decided not to build a house as agreed

by him. The defendants acquiesced, provided Horbick sold to someone approved by them. Horbick agreed that he would not do business with anyone without first introducing him to Clinton so that Clinton might give his approval. Subsequently, when Horbick told Clinton that Negroes were interested in buying, Clinton said he would not approve a sale to Negroes. Horbick again agreed that he would not sell to anyone not approved by Clinton. Further conversations between them were to the same effect. On June 8, 1949, the plaintiffs, who are husband and wife and are well-educated Negroes, paid Horbick $100 on account of an agreed purchase price of $600 for the lot. On June 15, 1949, upon payment of the $500 balance, Horbick quitclaimed the lot and his rights under the bond for a deed to the plaintiffs and sent a certified check to the defendants for the balance then due them from him. The check was returned to him by their attorney. The defendants also tendered to Horbick the $100 he had paid on account, but he refused to accept it. The defendants did not and do not consent to or approve the transfer to the plaintiffs. The defendants have ever since refused to convey to Horbick or the plaintiffs despite demand made by them.

At the trial, as stated above, a single issue was submitted to the jury upon an interrogatory approved by counsel for both the plaintiffs and the defendants: "Was it understood between the Clintons and Horbick that Horbick could not transfer his rights thereunder to any person or persons without the consent and approval of the Clintons?" By their special verdict the jury answered Yes. The principal contested issue, as the case was tried, was whether the contract of December 28, 1948, between the defendants and Horbick included, in addition to the written provisions contained in the bond for a deed, a further oral agree-

ment by Horbick not to assign his interest to any other party without receiving the consent and approval of the defendants, as alleged in their special defense. The facts recited above show that the defendants and Horbick did reach such an understanding four or five months after December 28, when Horbick changed his plans and decided not to build on the lot as he had originally intended. It is manifest therefore that the lack of any statement in the interrogatory as to the time when the understanding referred to therein was reached rendered the jury's answer valueless and of no significance in the determination of the case.

The court, however, proceeded to find that the contract of December 28, 1948, comprised not only the bond for a deed but also an oral agreement that Horbick would not assign his interest to anyone without first obtaining the approval and consent of the Clintons. This vital finding is challenged by the plaintiffs. The record suggests doubt as to the theory adopted by the court in reaching it and giving it effect. The special defense alleges that the approval provision was a part of the agreement but that "due to lack of legal training" the parties did not include it in the writing, and so the bond for a deed "does not state the true intent, meaning and contract of the parties" and should be "reformed and corrected" to contain the approval provision. Reformation is likewise requested in the prayer for relief in the defendants' counterclaim. Yet there are no allegations of mutual mistake sufficient to warrant the reformation of any contract. See *Gavin v. Johnson*, 131 Conn. 489, 493, 41 A. 2d 113; *Milford Yacht Realty Co.* v. *Milford Yacht Club, Inc.*, 136 Conn. 544, 549, 72 A. 2d 482; Practice Book, 1951, Forms No. 223-227. Further, although one of the court's conclusions was that the bond for a deed "should be and is reformed, corrected and modified to incor-

porate" the approval provision, the judgment makes no reference to any reformation or correction of the contract. It consists instead of a decree of rescission only, predicated on Horbick's violation of the approval provision.

The court's citation of *Cohn* v. *Dunn*, 111 Conn. 342, 348, 149 A. 851, as supporting its conclusion that the oral approval provision was an "agreed condition" at the time the bond for a deed was executed, "although not expressly incorporated therein," indicates that it finally decided that the oral provision could not be incorporated in the December 28 agreement by reforming the bond for a deed on the ground of mistake, but that the provision should be held to be supplemental to the bond for a deed as a contemporary oral agreement. Such an agreement could not be given effect without violating the parol evidence rule unless there was testimony upon which the trier could reasonably find that the parties intended to supplement their written contract by a contemporary oral agreement. *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 700, 46 A. 2d 605. This principle can only avail to enlarge the written contract by including the oral agreement when the latter is contemporaneous with the former. Unless the oral agreement was contemporaneous, the principle has no application. Therefore, the question decisive of the appeal is whether the court's finding that the oral approval provision was agreed to on December 28, 1948, can be sustained.

The burden of proof upon this issue rested upon the defendants. Horbick testified that the bond for a deed was the agreement of December 28, 1948, and categorically denied that any supplemental oral agreement as to approval by the defendants was made at that time. While the court might have rejected this testimony, it could not reasonably find that a contempor-

aneous agreement was made in the absence of credible affirmative evidence of that fact. Since Horbick and Clinton were the only witnesses concerning any agreement between them, the court's finding then must depend upon either Clinton's testimony or the reasonable inferences to be drawn from all of the evidence. The former is insufficient to warrant the finding. On direct examination Clinton, in response to the question, "[W]as anything said . . . about selling [Horbick's] interest in this bond for a deed?" answered, "I cannot say definitely. . . ." He further testified that at the time the bond for a deed was executed he told Horbick that the "only control" he knew of to preclude undesirable ownership of lots was "by quoting of prices," and that at that time it "was never anticipated that [Horbick] wouldn't build a house," indicating that there was then no question of resale contemplated. The sentence in the bond for a deed providing that it was not "to become a matter of public record" obviously constituted no expression of the claimed approval provision, nor was Clinton's testimony of his understanding of the effect thereof evidence that such a provision had been agreed to when the bond for a deed was executed. Furthermore, his testimony that it was his "understanding" that the approval provision was then agreed to could not suffice to establish the mutual agreement relied upon.

In so far as inferences are concerned, there is no evidence which affords the basis for a reasonable inference sufficient to support the court's finding. During the colloquy with counsel in considering the disposition of the issues, the court intimated that Horbick's request of Clinton for permission to sell his interest might afford the basis for such an inference. This is not the case. The undisputed evidence indicates that, when Horbick, in consequence of his decision not

to build, originally made the request in May, 1949, for permission to sell, as distinguished from a request to approve a buyer, he did it under the belief that it was necessary since the property "did not belong to" him because Clinton "owned the property." There is no dispute that, as already recited, Horbick thereupon agreed that he would not sell his interest without obtaining the defendants' approval of the purchaser, and that from time to time thereafter Horbick sought their approval of prospective customers. Since the agreement as to such approval was not made until the spring of 1949, the evidence of these requests for approval by the defendants affords no basis for an inference that the December 28, 1948, contract included a provision to this effect. The correction of the finding necessary because of the state of the evidence in the record is effective to eliminate the defendants' special defense and leaves without support the conclusions essential to sustain the judgment. Because of this, it is unnecessary to consider the counterclaim, which incorporated all of the allegations of the special defense. Nor do we discuss the question of racial discrimination, relied upon by the plaintiffs in argument. The proper method of raising that issue is by specific allegations not found in the pleadings of the present record.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.