MARIO VALENTIN *v.* COMMUNITY REMODELING COMPANY, INC., ET AL.

(AC 25196)

Bishop, Harper and Berdon, Js.

Argued February 10—officially released July 19, 2005

*Thomas A. Kaelin,* for the appellant (defendant HomEq Servicing Corporation).

*Opinion*

HARPER, J. The defendant HomEq Servicing Corporation (HomEq)[1] appeals from the judgment of the trial court, which failed to award damages to HomEq on its cross claim against the defendant Joseph C. Zanni, Jr. On appeal, HomEq claims that the court incorrectly failed to award damages for breach of contract. We agree with HomEq and reverse the judgment of the trial court on the cross claim in part and remand the case for further proceedings to determine the appropriate amount of damages.

The plaintiff, Mario Valentin, is the owner of residential property at 43-45 Prospect Street in New Haven. The premises at 45 Prospect Street served as his primary residence at all times relevant to this appeal. The plaintiff entered into a home improvement contract with defendant Community Remodeling Co., Inc. (Community Remodeling), and its principals, the individual defendants Zanni, Francis Guarino, Mark Guarino and Anthony Perrotti.[2] Under the contract, Community Remodeling agreed to perform certain home improvements to the plaintiff's residential property. Additionally, the plaintiff entered into a retail installment contract and a mortgage loan agreement with the principals to finance the work to be performed under the

---

[1] HomEq Servicing Corporation was formerly known as TMS Mortgage, Inc., which did business as The Money Store.

[2] The plaintiff also named Home Funding Resources, LLC, as a defendant.

home improvement contract. HomEq and Zanni entered into a master dealer agreement, pursuant to which HomEq financed the plaintiff's purchase of the home improvement work.[3] Under the master dealer agreement, Zanni assigned the retail installment contract and the mortgage loan to HomEq.

The plaintiff commenced this action, seeking a rescission of the home improvement contract, the retail installment contract and the mortgage loan agreement. HomEq then filed a cross claim against Zanni for breach of the master dealer agreement. The master dealer agreement provided that Zanni would defend, indemnify and hold harmless HomEq, and that Zanni would repurchase the retail installment contract if a claim was made that challenged the validity of the retail installment contract and the mortgage. Zanni was defaulted for failure to appear.

The court conducted a hearing in damages on January 8, 2004, separately considering the plaintiff's complaint and HomEq's cross claim. On February 6, 2004, it rendered its judgment and issued its memorandum of decision. The court determined in its ruling the following: "Community Remodeling acted without regard for corporate form to defraud the plaintiff consumer and that the individual defendants . . . are liable because the entry of defaults and the testimony justify piercing of the corporate veil and holding each personally liable for the conduct alleged and proven. Further, their conduct in the giving of a loan later reassigned and converted to a mortgage recorded on the land records without properly informing the plaintiff of the terms and obligations of either the home improvement contract or the retail installment contract he was required to exe-

[3] Prior to the hearing in damages, the plaintiff withdrew his claims against HomEq. Although the plaintiff did not proceed against HomEq, HomEq was present through counsel to prosecute its cross claim against Zanni.

cute or of the mortgage taken on the property to secure those obligations was fraudulent and in violation of General Statutes § 42-110a et seq., thus entitling the plaintiff to attorney's fees under General Statutes § 42-110g (d) and punitive damages under § 42-110g (a). The testimony of both [the plaintiff] and Larry Stewart, a construction manager of many years experience in the home improvement industry who testified as an expert in that field, established that the defendants undertook to replace a total of forty-eight windows and four doors at property owned by the plaintiff and located at 43-45 Prospect Street in New Haven, failed to complete that work and negligently performed work completed so as to cause damage to the property, which damage needs yet to be repaired . . . ."

The court further determined: "The real estate mortgage in the amount of $419,697 recorded at Volume 5460, Page 300 of the New Haven land records, the home improvement contract and the retail installment contract are hereby declared void ab initio and are rescinded. The usual condition precedent to rescission, that is, the offer to restore the other party to its former condition as nearly as possible . . . is not applicable here since the defendants have not lost anything of value and the law does not require the doing of a useless act." (Citation omitted.)

With respect to HomEq's cross claim, the court determined: "At trial [HomEq] proceeded on a breach of contract claim based upon a master dealer agreement dated October 8, 1998, between TMS Mortgage, Inc. (The Money Store) and Community Remodeling. . . . Pursuant to that document, HomEq became the owner and holder of the retail installment contract . . . . HomEq proceeded at trial against Zanni on the claim that Zanni, doing business as Community Remodeling, made certain representations, warranties and covenants in the master dealer agreement, including the

obligation to defend, indemnify and hold harmless HomEq in the event of a claim brought against it by the plaintiff and with regard to the work contracted to be done at 43-45 Prospect Street in New Haven. The court finds Zanni personally liable for the conduct of Community Remodeling as alleged and proven. . . .

"At trial, HomEq specifically asserted that Zanni breached the agreement when he warranted that (1) the aforementioned retail installment contract was a 'valid, existing, enforceable and binding obligation of the customer, and arises out of a bona fide sale . . .' (2) he would repurchase the retail installment contract as per specified terms in the event that contract was in any way defective, not valid and binding, or if any representation, warranty or covenant made by him was in any way untrue or inaccurate and he failed to cure that defect within thirty days of notice by HomEq, and (3) he would defend, indemnify and hold harmless HomEq with regard to any claim arising under the contract and asserted by the customer. Under the terms of the agreement, Zanni's duty to indemnify HomEq includes, but is not limited to, reimbursement of attorney's fees, actual costs, settlement costs, consequential and incidental damages and any and all other expenses incurred in connection with any breach, rescission or other nonperformance or noncompliance, whether or not a lawsuit is filed. . . . The court finds Zanni in breach in each of these ways as above described, which breach required HomEq to defend the claim brought by [the plaintiff], to prosecute the cross claim, and thereby to incur attorney's fees and other costs [in an aggregate amount of $28,722.70]."[4]

---

[4] The court further determined: "While HomEq's prayer for relief requested repayment of funds it paid in settlement or judgment of [the plaintiff's] action, no evidence of the same was offered; thus, no additional amount is awarded for any loss HomEq may claim with regard to the uncollectible 'debt' arising from the contract procured by fraudulent means, which contract was declared null and void from its inception and has been rescinded by the court."

On February 11, 2004, HomEq filed a motion to reargue on the ground that "the court did not include as part of its judgment an amount of damages associated with Zanni's breached obligation to repurchase the loan." The court denied the motion on February 13, 2004, stating: "The court considered the issue, but . . . the contract, procured by fraud, was declared void ab initio . . . and was rescinded. There is therefore no valid contract upon which HomEq can collect. The Money Store bought and later assigned to HomEq a fraudulent document." This appeal followed.[5]

This appeal concerns only HomEq's cross claim; therefore, we review only the court's judgment relating thereto. In its appeal, HomEq contends that the court improperly failed to award damages pursuant to its cross claim for Zanni's breach of contract relating to his obligation to repurchase the loan. We agree.

We first set forth our standard of review. "The trial court has broad discretion in determining damages, and we will not overturn its decision unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 609, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000).

"Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their

---

[5] Zanni did not file an appearance in this appeal, nor did he file a brief or appear at oral argument.

amount in money with reasonable certainty. . . . Thus, [t]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Citation omitted; internal quotation marks omitted.) *CAS Construction Co.* v. *East Hartford*, 82 Conn. App. 543, 556, 845 A.2d 466 (2004).

The court determined that Zanni had breached his warranty in the master dealer agreement and had not fulfilled his obligation under such agreement to repurchase the retail installment contract, thereby entitling HomEq to damages provided for in the master dealer agreement. The court, however, improperly determined that because the retail installment contract was unenforceable there was "no valid contract upon which HomEq can collect." We conclude, as a matter of law, that HomEq may recover under the master dealer agreement. The court declared the home improvement contract and the retail installment contract to be void. It did not invalidate the master dealer agreement; it specifically found that Zanni had breached the master dealer agreement. On the basis of our review of the court's decision, as well as the master dealer agreement, we conclude that HomEq is entitled to any damages available under the master dealer agreement.[6]

The master dealer agreement contains provisions that served to protect HomEq in the event that a borrower challenged any of the contracts that were assigned to HomEq pursuant to the master dealer agreement. This is the scenario with which we are confronted. At trial,

---

[6] See *Marine Midland Services* v. *Stawecki*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 370182 (October 27, 1992) (holding that when assignment in dealer agreement provided that "if there is any breach of warranty, the defendant will, on demand, repurchase the contract" and contract assigned under dealer agreement was deemed fraudulent, dealer agreement remained valid and damages were awarded in amount required to repurchase retail installment agreement).

the court determined that Zanni breached the master dealer agreement and ordered Zanni to pay HomEq attorney's fees and costs incurred in bringing its cross claim; the court failed to award damages relating to Zanni's failure to repurchase the defective contracts.

Because the underlying contracts were entered into by fraudulent means, HomEq is entitled to recover damages related to Zanni's repurchase of such defective contracts. The master dealer agreement clearly sets forth the damages that are recoverable and the means by which the damages are to be calculated. The master dealer agreement provides: "Dealer [Zanni] will: (a) repurchase the related Contract from Buyer [HomEq] at a price equal to (i) one hundred percent (100%) of the unpaid principal balance of such Contract, plus (ii) any accrued and unpaid interest at the annual rate borne by the Contract to the date of the repurchase, plus (iii) any fees and expenses charged by third parties relating to the repurchase of the Contract, plus (iv) the premium, if any, paid by Buyer to Dealer, plus (v) all expenses incurred by Buyer in connection with the purchase of the Contract; and (b) in all cases, whether or not the Contract has been repaid or otherwise satisfied, indemnify, defend and hold Buyer harmless for any loss, damage, forfeiture, penalty or expenses (including reasonable attorney['s] fees and costs) incurred in connection with the defective Contract." HomEq has submitted the amount of damages it incurred as set forth in its affidavit of debt.

The judgment on the cross claim is reversed only as to the court's failure to award damages in favor of HomEq and the case is remanded for a hearing to determine the proper amount of damages to be awarded to HomEq. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.