# THERESA SOKAITIS *v.* ROSE BAKAYSA
## (AC 28099)

Flynn, C. J., and Lavery and West, Js.

Argued November 28, 2007—officially released February 5, 2008

*Samuel M. Pollack*, with whom was *Sean R. Higgins*, for the appellant (plaintiff).

*William J. Sweeney, Jr.*, for the appellee (defendant).

*Opinion*

WEST, J. The plaintiff, Theresa Sokaitis, appeals from the judgment of the trial court rendered in favor of the defendant, Rose Bakaysa, following the granting of the defendant's motion for summary judgment. On appeal, the plaintiff claims that the court improperly held that General Statutes § 52-553 was applicable to the written agreement between the plaintiff and the defendant. We agree and, therefore, reverse the judgment of the trial court.

The following factual and procedural history is relevant to our disposition of the plaintiff's claim. On April 12, 1995, the plaintiff and the defendant, who are sisters, created and signed a written agreement. The agreement stated: "This is a letter of agreement between [the defendant] and [the plaintiff]. This letter is dated on 4/12/95. This letter states that we are partners in any winning we shall receive, to be shared [equally]. (Such as slot machines, cards, at Foxwoods Casino, and [lottery] tickets, etc.)." On June 20, 2005, a winning Powerball lottery ticket, worth $500,000, from the June 18, 2005 drawing was presented to the Connecticut lottery officials for payout. The winning ticket was presented by Joseph F. Troy, Sr., the brother of the parties, who indicated that he held the ticket jointly with the defendant. Lottery officials paid Troy and the defendant each $249,999, less federal tax withholding. The defendant did not provide the plaintiff with any portion of the lottery winnings.

As a result, on August 19, 2005, the plaintiff brought an action against the defendant for breach of contract. The plaintiff sought money damages equal to half of

the defendant's Powerball winnings plus interest. On August 17, 2006, the defendant filed a motion for summary judgment, alleging that there was no genuine issue of material fact and that the agreement on which the plaintiff was suing was unenforceable under § 52-553, thereby entitling the defendant to judgment as a matter of law. On September 14, 2006, the court granted the defendant's motion for summary judgment and rendered judgment in the defendant's favor. This appeal followed. Additional facts will be set forth as necessary.

"As a preliminary matter, we set forth the appropriate standard of review. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 26–27, 930 A.2d 682 (2007).

In the present case, the court held that it could not enforce the contract between the plaintiff and the defendant. The court found that § 52-553 applied to the agreement made between the parties. Section 52-553 provides in relevant part: "All wagers, and all contracts and securities of which the whole or any part of the consideration is money or other valuable thing won, laid or bet, at any game, horse race, sport or pastime,

and all contracts to repay any money knowingly lent at the time and place of such game, race, sport or pastime, to any person so gaming, betting or wagering, or to repay any money lent to any person who, at such time and place, so pays, bets or wagers, shall be void . . . ." The court found that "[t]he agreement between [the plaintiff] and [the defendant], if indeed it is a contract at all, is one in which each promised to give the other half of her gambling winnings in return for a mutual promise from the other to do the same." The court then found that "[t]he consideration for their contract is 'money . . . won . . . at any game.'"

In her brief, the plaintiff argues that "the parties' agreement is not a 'wagering contract' for purposes of § 52-553 because it is a mutual exchange of promises to share profits from legal forms of gambling in Connecticut." Furthermore, the plaintiff argues that "money . . . won . . . at any game" was not the consideration for the agreement.[1] Because the "money . . . won . . . at any game" was not in existence at the time the parties entered into the agreement, it could not have been the consideration. In contrast, the plaintiff argued that the consideration was, in fact, the exchange of promises to share equally in the proceeds from the legal activity. We agree with the plaintiff.

We conclude that § 52-553 was not applicable to the agreement between the plaintiff and the defendant. The

[1] The plaintiff also made additional arguments as to why General Statutes § 52-553 was inapplicable to the agreement between her and the defendant. For instance, the plaintiff argued that the statute was inapplicable to the agreement because "the gaming activity that forms its subject matter is authorized by statute and is not contrary to Connecticut's public policy." Additionally, the plaintiff argued that the statute did not apply to the agreement because the statute had been repealed partially by subsequent legislation relating to legal forms of gambling in Connecticut. We find it unnecessary to reach those additional arguments because we conclude that the statute did not apply to the agreement on the ground that the consideration in the agreement was not "money . . . won . . . at any game," as is prohibited by the statute.

statute makes void any wager or contract "of which the whole or any part of the consideration" is "money . . . won . . . at any game . . . ." General Statutes § 52-553. In the present case, the plaintiff and the defendant promised to share equally in any winnings they received from various forms of legalized gambling, including the lottery. They did not make promises that were induced by the consideration of "money . . . won . . . at any game . . . ." Therefore, the consideration for the agreement was not the money that they won but rather their mutual promises to one another to share in any winnings they received. Consideration is "a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. . . . An exchange of promises is sufficient consideration to support a contract." *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 606, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000). Therefore, § 52-553 does not apply to the agreement between the plaintiff and the defendant because the consideration was not "money . . . won . . . at any game . . . ."

Because § 52-553 did not apply to the agreement between the plaintiff and the defendant, the defendant was not entitled to summary judgment as a matter of law. Therefore, the court improperly granted the defendant's motion for summary judgment and improperly rendered judgment in favor of the defendant.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion FLYNN, C. J., concurred.

LAVERY, J., dissenting. I respectfully disagree with the majority's conclusion that General Statutes § 52-553[1] was improperly applied to the written agreement

[1] General Statutes § 52-553 provides in relevant part: "All wagers, and all contracts and securities of which the whole or any part of the consideration is money or other valuable thing won, laid or bet, at any game, horse race, sport or pastime, and all contracts to repay any money knowingly lent at

between the parties because the consideration for the agreement consisted of mutual promises to each other to share in any winnings either received. The consideration in this case was "money . . . won . . . at any game" and therefore prohibited. I would affirm the judgment of the trial court.[2]

"Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." (Internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 23, 804 A.2d 865 (2002), quoting *Finlay* v. *Swirsky*, 103 Conn. 624, 631, 131 A. 420 (1925). Consideration is defined as "the reason, motive, or inducement, by which a man is moved to bind himself by an agreement." Black's Law Dictionary (7th Ed. 1999). As the trial court properly held, the motive for the promises exchanged by the parties was to split "money . . . won . . . at any game."

The plaintiff, Theresa Sokaitis, argues that § 52-553 is contrary to Connecticut's public policy because gambling has been legalized to a great degree within Connecticut. She cites the establishment of the division of special revenue in the early 1970s and the authorization of the state lottery in 1996, as evidence of the "erosion" of Connecticut's policy against gambling. The legislative history of § 52-553, however, tells a different story. Not only is it possible to trace the relevant part of this statute back to 1902,[3] but alterations were made to this statute subsequent to the institution of the Connecticut

the time and place of such game, race, sport or pastime, to any person so gaming, betting or wagering, or to repay any money lent to any person who, at such time and place, so pays, bets or wagers, shall be void . . . ."

[2] I am adopting some of the reasoning of the Virginia Supreme Court in *Hughes* v. *Cole*, 251 Va. 3, 465 S.E.2d 820 (1996) (holding that statute voiding contracts where part or all of consideration is money is still valid even after legislature had decriminalized bingo games and lotteries).

[3] See General Statutes (1902 Rev.) § 4531.

Lottery Corporation.[4] As a tenet of legislative interpretation, "[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or nonaction will have upon any one of them." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 431, 927 A.2d 843 (2007). Because of this, we must assume that it was the intent of the legislature to continue to prohibit wagering contracts like the one at issue in this case.

Accordingly, I respectfully dissent and would affirm the judgment of the trial court.

---

[4] Number 03-60 of the 2003 Public Acts updated the language of the statute, designated subsection (1) as such and added subsection (2) of the statute allowing an exception for the sale of a raffle ticket.